UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| DAVID LAWRENCE JOHNSTON, | ) | No. CV-05-078-CI |
| Petitioner, | ) | REPORT AND RECOMMENDATION TO GRANT MOTION TO DISMISS WITHOUT PREJUDICE |
| v. | ) | |
| CAROL PORTER, et al., | ) | |
| Respondents. | ) | |

BEFORE THE COURT on Report and Recommendation is Respondents' Answer and Memorandum of Authorities which the court construes as a Motion to Dismiss under Rule 8, Rules Governing § 2254 Cases. (Ct. Rec. 23.) Petitioner, who is proceeding pro se, is currently in the custody of the Washington State Department of Corrections at the Washington Corrections Center (WCC) at Shelton, Washington; Assistant Attorney General John J. Samson represents Respondent. The parties have not consented to proceed before a magistrate judge.

**ISSUES**

On June 18, 1998, following a jury trial, petitioner was convicted in Spokane County Superior Court of second degree felony murder (Count II), attempted second degree murder (Count III) (initially charged as attempted first degree murder), first degree robbery (Count IV), and second degree robbery (Count V). (Ct. Rec. 18, Ex. 1.) With respect to Count III, the trial court determined there was insufficient evidence of premeditation as to the initial

REPORT AND RECOMMENDATION TO GRANT
MOTION TO DISMISS WITHOUT PREJUDICE - 1

charge of attempted first degree murder, but permitted the prosecution to instruct the jury on the lesser included crime of second degree attempted murder. At sentencing, the trial court merged the conviction for attempted second degree murder with Count IV, first degree robbery.

Following review, the Court of Appeals concluded the trial court had erred in merging Count III with Count IV and remanded for re-sentencing to consider concurrent or consecutive firearm enhancements and exceptional sentencing issues. That re-sentencing has not yet occurred.

Following completion of collateral review, the Court of Appeals vacated the conviction for second degree felony murder (Count II) in light of *In re Andress*, 147 Wn. 2d 602, 56 P.3d 981 (2002)(assault may not serve as the predicate crime for second degree felony murder under former RCW 9A.32.050(1)(b) (1976)). (Ct. Rec. 18, Ex. 9.) Respondent asserts as of July 22, 2005, a certificate of finality has not been issued by the appellate court in the personal restraint proceedings; additionally, Petitioner has not been charged at this time with a second prosecution for the events alleged under Count II.

Petitioner now seeks federal habeas relief, raising two claims: (1) violation of double jeopardy based on the possibility of retrial on the second degree felony murder charge, and (2) violation of double jeopardy based on the trial court's decision to instruct the jury on the lesser included offense of second degree attempted murder. Respondent moves to dismiss both claims with prejudice contending the first claim is not ripe because there has been no decision to prosecute Petitioner on the events supporting the charge

REPORT AND RECOMMENDATION TO GRANT
MOTION TO DISMISS WITHOUT PREJUDICE - 2

of second degree felony murder.  Additionally, Respondent asserts this claim was not presented to the state courts and remains unexhausted.  Respondent also moves to dismiss the second claim because the state court decision to instruct the jury on the lesser included offense of second degree murder was not contrary to clearly established Supreme Court law.

**FACTS**

The state court summarized the facts surrounding Petitioner's convictions as follows:

> Mr. Johnston, along with his friend, Aaron Simpson, was involved in three separate events in Spokane during September 1997.  First, late on September 7, Mr. Simpson knifed and killed Michael Flees; charges: Count I, second degree murder; alternatively, Count II, second degree felony murder.  Second, early on September 8, the pair robbed a Conoco mart where Mr. Simpson stabbed the clerk, Mark Bessermin; charges: Count III, attempted first degree murder (amended at trial to attempted second degree murder); and Count IV, first degree robbery.  Third, about two hours later the pair robbed a Texaco mart where Joshua Tyree clerked; charge: Count V, second degree robbery.  Count VI alleged an assault on Shane Nelson for which Mr. Johnston was acquitted.  It will not be discussed except necessarily.  We turn now to the critical facts.

> At about 8:30 p.m. on September 7, after an afternoon of drinking, Mr. Johnston and Mr. Simpson, along with a mutual friend, Brodie Dowd, ran into acquaintances Todd Bridges and Shane Nelson. Allegedly, Mr. Simpson used a knife and Mr. Johnston used his fists to assault Mr. Nelson in a dispute related to Mr. Simpson's car.  Mr. Nelson testified about Mr. Simpson's use of a knife while in Mr. Johnston's presence.

> After the confrontation, all five men went to a nearby motel.  Mr. Simpson wanted to question Mr. Bridges and Mr. Nelson about drugs missing from the car.  Mr. Johnston, Mr. Dowd, and Mr. Simpson then discussed robbing someone to make up for the loss.  According to Mr. Nelson, Mr. Johnston was bragging about having "weapons under control" and "nobody was going to mess with them."

> Just before midnight the five men went to see a friend on Crown Avenue.  When they arrived, Mr. Simpson and Mr. Bridges knocked on the door.  No one answered. Mr. Simpson walked back to the car; Mr. Bridges decided to

REPORT AND RECOMMENDATION TO GRANT
MOTION TO DISMISS WITHOUT PREJUDICE - 3

1  stay.  Just then, a car sped by near Mr. Simpson's car.
   Mr. Dowd threw up his arms in a gesture of "what is going
2  on."   The driver of the speeding car, Michael Flees,
   stopped and got out for reasons unclear.   Mr. Nelson
3  testified Mr. Flees did not appear angry, and speculated
   that Mr. Flees may have thought someone needed help.  Mr.
4  Simpson, Mr. Dowd and Mr. Johnston approached Mr. Flees.
   Mr. Simpson and Mr. Dowd attacked Mr. Flees. Mr. Johnston
5  got inside Mr. Flees's car, then stood by the driver's
   door in a position that could be interpreted as preventing
6  Mr. Flees's escape.  Mr. Simpson stabbed Mr. Flees.  The
   four remaining men then ran back to Mr. Simpson's car and
7  left.  Mr. Flees bled to death near the scene.

8       The four men returned to the motel.  Mr. Simpson, Mr.
   Dowd and Mr. Johnston were bragging about the stabbing.
9  Mr. Nelson testified that Mr. Johnston never disagreed
   with Mr. Simpson's actions or tried preventing them.  Mr.
10 Johnston  and  Mr. Simpson  continued  to  talk  about
   committing a robbery.  Mr. Nelson decided to sneak away
11 from the others.  Mr. Nelson and Mr. Bridges called the
   police two days later giving information on the Flees
12 stabbing.

13      Mr. Johnston and Mr. Simpson decided to drive around.
   At approximately 4:00 a.m. on September 8, they stopped at
14 a Conoco mart.  Mr. Johnston went in first to get the key
   to use the outside restroom.   He returned with Mr.
15 Simpson.  Both wore hoods over their heads and bandannas
   around their faces.  Mr. Johnston told the Conoco clerk to
16 give him the money out of the till.  While Mr. Johnston
   was taking the money, Mr. Simpson stabbed the clerk five
17 times in the neck and back.  After they left, Mr. Simpson
   disposed of the knife.  Mr. Johnston testified it was not
18 until this point, ten minutes after the Conoco robbery,
   that he realized Mr. Simpson had used the knife.
19
        The men continued driving around looking for drugs to
20 purchase  until  Mr.  Simpson  received  a  page.   At
   approximately 6:00 a.m. they stopped at a Texaco mart
21 located across the street from the Conoco mart they had
   robbed earlier.  Mr. Simpson and Mr. Johnston entered the
22 store and demanded money.   The two took money from the
   till and cigarettes.  They then told the clerk to get on
23 the floor.  Mr. Simpson kicked the clerk in the back of
   the head.  They told the clerk not to call the police and
24 left.  Mr. Johnston and Mr. Simpson were soon arrested.

25      When Mr. Johnston requested dismissal after the
   State's evidence, the court denied all requests, except
26 for a newly added charge of attempted first degree murder
   of the Conoco clerk.   The court found no "sufficient
27 factual  basis  for  premeditation."   The  State  then
   requested to amend the information back to attempted
28 second degree murder, arguing it was a lesser degree of

REPORT AND RECOMMENDATION TO GRANT
MOTION TO DISMISS WITHOUT PREJUDICE - 4

> attempted first degree murder. The court granted the State's request, concluding Mr. Johnston would not be prejudiced because he had not yet put on his defense. Mr. Johnston's counsel did not request intoxication instructions.
>
> Over Mr. Johnston's objections, the court gave Instruction No. 8, on accomplice liability and Instruction No. 16A, which provided the elements for attempted second degree murder. Without objection, Instruction 16A omitted the name of the Conoco clerk. The jury found Mr. Johnston guilty of Count II, second degree felony murder; Count III, attempted second degree murder; Count IV, first degree robbery; and Count V, second degree robbery. Counts II, III, and IV included special deadly weapon verdicts.
>
> At sentencing, the court merged the attempted second degree murder conviction into the first degree robbery conviction. The judge ran the underlying sentences concurrently to each other and ran all the deadly weapon sentence enhancements concurrently. The base sentence was 195 months, and one 24 month sentence enhancement was added for a total 219 month sentence. Mr. Johnston appealed. The State cross-appealed the merger and the sentence.

*State v. Johnston*, 100 Wn.App. 126, 129-132, 996 P.2d 629, *review denied*, 141 Wn. 2d 1030(2000).

**RIPENESS - NEW PROSECUTION; RESENTENCING**

Respondent first contends the claim raised as to the possibility of retrial on the events comprising the felony murder charge is not ripe because no prosecutorial decision has been made as to whether Petitioner will be retried.

The Double Jeopardy Clause prohibits the government from "punishing twice, or attempting a second time to punish criminally for the same offense." *United States v. Ursery*, 518 U.S. 267, 273 (1996) (internal quotation marks omitted); see also U.S. Const. Amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb"). The courts analyze two questions with respect to double jeopardy claims: First, is the

second offense the "same" as the first?  This question triggers the test announced in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("the applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not").  Under *Blockburger*, "[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not." *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir.), cert. denied, 540 U.S. 998 (2003); *U.S. V. Hickey*, 367 F.3d 888, 891 (9th Cir. 2004), *opinion amended on other grounds*, 400 F.3d 658 (2005), *petition for cert. filed* July 6, 2005.

The second question posed by the double jeopardy clause is whether there has been an attempt to "punish twice." This question triggers the test under *Hudson v. United States*, 522 U.S. 93, 99 (1997) (setting forth factors for determining whether a civil penalty should be considered a criminal penalty).

A "colorable" double jeopardy claim "contest[s] the very power of the Government to bring a person to trial, and the right would be significantly impaired if review were deferred until after the trial." *Abney v. United States*, 431 U.S. 651, 662 (1977) (pretrial denial of dismissal of charge on double jeopardy grounds may be appealed immediately).  However, a claim of double jeopardy must at least be "colorable." *United States v. Sarkisian*, 197 F.3d 966, 983 (9th Cir. 1999), *cert. denied sub nom, Mikayelyan v. United States*, 530 U.S. 1220 (2000).  To be colorable, a double jeopardy claim must have "some possible validity." *United States v. Price*, 314 F.3d

417, 420 (9th Cir. 2002). This issue would become ripe only if and when the government attempts a second prosecution. *United States v. Corona*, 34 F.3d 876, 882 (9th Cir. 1994); *United States v. Saccoccia*, 18 F.3d 795, 799 & n.3 (9th Cir. 1994), *cert. denied*, 517 U.S. 1105 (1996) (indictment triggers a colorable double jeopardy claim). Similarly, double jeopardy claims as to the punishment prong do not become ripe until punishment has been imposed. *United States v. McKinley*, 38 F.3d 428, 430 (9th Cir. 1994) (finding that when a double jeopardy claim focuses on double punishment, it is not ripe for consideration when one sentence was not yet finalized and the second conviction had not yet occurred). Here, Petitioner neither has been re-charged nor re-sentenced; thus, his double jeopardy claims are not ripe. Following a decision to re-prosecute and completion of sentencing remand proceedings, Petitioner then may pursue relief in the state courts if issues arise from those proceedings.

As for the remaining exhausted issue involving the trial court's instruction to the jury on the lesser included offense, that conviction is also not final, as Petitioner is subject to re-sentencing. Although Respondent advises the claim is exhausted and may be reached on the merits, the Ninth Circuit has held in a case in which an appellate court partially or wholly has reversed a defendant's conviction or sentence and remanded to the district court for further proceedings, the petitioner's "judgment does not become final, and the statute of limitations does not begin to run, until the district court has entered an amended judgment and the time for appealing that judgment has passed." *United States v. Colvin*, 204 F.3d 1221, 1225 (9th Cir. 2000); *see also Maharaj v.*

*Secretary*, 304 F.3d 1345, 1349 (11th Cir. 2002). Thus, the merits of that claim may be addressed if Petitioner pursues federal habeas proceedings following completion of state court proceedings. Accordingly, **IT IS RECOMMENDED** Respondents' Motion to Dismiss **(Ct. Rec. 23)** be **GRANTED** and Petitioner's claims be **DISMISSED WITHOUT PREJUDICE.**

### OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report **within TEN (10) days** following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying any the portions to which objection is being made, and the basis therefor. **If it deems such a response necessary, the court will direct the parties to respond to any objections.** Attention is directed to FED. R. CIV. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 73; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a

court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to Petitioner and counsel for Respondent and the referring district judge.

DATED September 29, 2005.

                    S/ CYNTHIA IMBROGNO
               UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION TO GRANT
MOTION TO DISMISS WITHOUT PREJUDICE - 9